IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| TERESA SABBIE, Individually, as Personal Representative of the ESTATE OF MICHAEL SABBIE, and as parent and Natural guardian of her minor children, T.S., T.S., and M.S.; SHANYKE NORTON, as parent and natural guardian of her minor child, M.S.; KIMBERLY WILLIAMS; MARCUS SABBIE; and CHARLISA CRUMP, *Plaintiffs* <br><br> v. <br><br> SOUTHWESTERN CORRECTIONAL, LLC d/b/a LASALLE CORRECTIONS, LLC and LASALLE SOUTHWEST CORRECTIONS; LASALLE MANAGEMENT COMPANY, LLC; BOWIE COUNTY, TEXAS; the CITY of TEXARKANA, ARKANSAS; TIFFANY VENABLE, LVN, individually; M. FLINT, LVN, individually; GREGORY MONTOYA, M.D., individually; CLINT BROWN, individually; NATHANIEL JOHNSON, individually; BRIAN JONES, individually; ROBERT DERRICK, individually; DANIEL HOPKINS, individually; STUART BOOZER, individually; ANDREW LOMAX, individually; SHAWN PALMER, individually; SIMONE NASH, individually; and JOHN and JANE DOES 1-10, *Defendants* | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | NO. 5:17-CV-113 |

**LASALLE DEFENDANTS' ANSWER TO PLAINTIFFS' ORIGINAL COMPLAINT
(SUBJECT TO LASALLE DEFENDANTS'
MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM)**

Defendants, Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC and

LaSalle Southwest Corrections; LaSalle Management Company, LLC; Bowie County, Texas;

Tiffany Venable, LVN, individually; M. Flint, LVN, individually; Clint Brown, individually;

Nathaniel Johnson, individually; Brian Jones, individually; Robert Derrick, individually;

Daniel Hopkins, individually; Stuart Boozer, individually; Andrew Lomax, individually;

Shawn Palmer, individually; Simone Nash, individually; (LaSalle Defendants), and any John and Jane Does 1-10 later named who were agents or employees of LaSalle Defendants, file this answer to Plaintiffs' Original Complaint, specifically subject to LaSalle Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6).

### A. Introduction - Background Facts

Michael Sabbie was arrested and taken to the Bi-State Jail on July 19, 2015 after threatening to kill his wife. The interaction between Teresa Sabbie and the Texarkana, Arkansas Police Department patrol officer includes:

*Officer:* *Has he ever threatened to kill you or the children?*

*T. Sabbie:* *Yes.*

*Officer:* *Are you worried the offender will try to kill you?*

*T. Sabbie:* *Yes.*

The specific threat as reported by Teresa Sabbie was a statement from Michael Sabbie: *"B\*\*ch, I'm gonna beat your mother f\*\*\*ing a\*\*."* When asked by the TAPD officer if she had proof of intent of bodily injury, Teresa Sabbie replied: *"Yes. He was going to do it. If I said another word, I knew he was going to do it right up there in front of everybody."*

Upon being booked on charges, Mr. Sabbie immediately began making complaints with the goal of obtaining a hospital referral which would likely result in his release by the holding authority, Texarkana, Arkansas. This conduct was consistent with Mr. Sabbie's behavior during a detention at Bi-State Jail a few months prior. During that detention, which followed Sabbie's violent attack on Lifenet EMTs and emergency department nurses and physicians at Wadley Regional Medical Center, Sabbie complained of shortness of breath. However, when checked by the medical staff, his oxygen saturation level was normal - 96%. In addition to complaints of shortness of breath (with no physiological basis), Sabbie

complained of:

- "Screaming and ringing in my ear by FBI agents, and glue was filling my hand and body and starting to come out of me again with pesticides."
- "Flies coming out and going in my brain, and laying eggs for them".
- "Someone put a microphone in my head. Someone is talking through it from the trains."
- "They send glue to ya'll and put in the needles so that the glue can come out of my eyes and pores and it is making my body hurt and stiff".
- The FBI is watching and "will kill him".

Following booking, during the early morning hours of July 20, 2015, Sabbie was brought to medical for evaluation with additional complaints of shortness of breath. His oxygen saturation was originally 90%, but when asked to cough, went to 92%.

The next day, July 21, 2015, Sabbie was brought to medical via wheelchair based upon complaints to a correctional officer that he was, once again, short of breath. A nurse checked his oxygen saturation level. It was between 93% and 97% and his lungs were clear. When the nurse informed him that his vitals were normal and he could be returned to his pod, Sabbie jumped up out of his wheelchair, screamed profanities at the nurse, and walked out of the medical unit on his own power without any difficulty (despite the purported need for a wheelchair to bring him to medical).

On the afternoon of July 21, 2015, Sabbie made a court appearance, and along with approximately ten other arrestees, was provided information regarding bond. Each of the prisoners being transported requested that the officer accompanying them, Clint Brown, allow them to use the phone. Officer Brown explained that they would first return to their pod, and then would be granted phone access. Sabbie refused to go to his pod and refused to walk with the other inmates, but rather, turned and attempted leave the secured area and

enter the unsecured portion of the Bi-State building. When Officer Brown sought to prevent Sabbie from leaving the secured area, an altercation occurred. Following that altercation, Sabbie was taken to the medical unit where he complained once again of shortness of breath. A pulse oximeter was attached to his finger and the reading showed normal oxygen saturation between 94% and 96%. Sabbie was then taken to his cell. He was found unresponsive in the early morning hours of the following day, July 22.

Sabbie's body was taken to the Arkansas State Crime Laboratory for autopsy. The autopsy revealed "no significant injuries" and "no apparent pneumonia". The autopsy further revealed severe heart disease and at least two prior episodes of heart muscle damage and more prior episodes of congestive heart failure. In the opinion of the examiner, "the altercation played a minimal role in the decedent's death, or may not have contributed at all to his death. Due to this, the altercation was not considered as contributing to the cause of death, and therefore, the manner of death was classified as natural".

Further, the facts and circumstances of Sabbie's death were fully investigated by the United States Department of Justice Civil Rights Division upon a complaint that defendants might have violated the civil rights of Michael T. Sabbie. After full review and careful consideration, the United States Department of Justice concluded that the evidence does not establish a violation of federal criminal civil rights statutes.

After the conclusion of the Department of Justice investigation, this civil action was filed. Defendants, therefore, answer the specific allegations as follows:

### B. Admissions & Denials

1. Defendants admit the allegations of the first sentence, but deny the allegations of the second and third sentence of paragraph 1 of the Plaintiffs' Original Complaint.

2. Defendants deny the allegations of paragraph 2 of the Plaintiffs' Original Complaint.

3. Defendants admit the allegations of paragraph 3 of the Plaintiffs' Original Complaint.

4. Defendants admit the allegations of paragraph 4 of the Plaintiffs' Original Complaint.

5. Defendants admit the allegations of paragraph 5 of the Plaintiffs' Original Complaint.

6. Defendants are without sufficient information to admit or deny the allegations of paragraph 6 of the Plaintiffs' Original Complaint.

7. Defendants are without sufficient information to admit or deny the allegations of paragraph 7 of the Plaintiffs' Original Complaint.

8. Defendants are without sufficient information to admit or deny the allegations of paragraph 8 of the Plaintiffs' Original Complaint.

9. Defendants are without sufficient information to admit or deny the allegations of paragraph 9 of the Plaintiffs' Original Complaint.

10. Defendants are without sufficient information to admit or deny the allegations of paragraph 10 of the Plaintiffs' Original Complaint.

11. Defendants admit the allegations of the first, second, third and sixth sentence of paragraph 11 of the Plaintiffs' Original Complaint. The fourth and fifth sentences contain a conclusion of law, rather than a factual allegation, regardless, Defendants are without sufficient information to admit or deny the fourth and fifth sentence of paragraph 11 of the Plaintiffs' Original Complaint.

12. Defendants admit the allegation of the first sentence of paragraph 12 of the Plaintiffs' Original Complaint. Defendants deny the city's shared responsibility, but admit the remainder of the second sentence of paragraph 12 of the Plaintiffs' Original Complaint. The third sentence contains a conclusion of law, rather than a factual allegation, regardless,

Defendants are without sufficient information to admit or deny the third sentence of paragraph 12 of the Plaintiffs' Original Complaint. Defendants are without sufficient information to admit or deny the allegations of sentences four, five and six of paragraph 12 of the Plaintiffs' Original Complaint.

13. Defendants deny the allegation of the first sentence of paragraph 13 of the Plaintiffs' Original Complaint. Defendants admit the allegation of the second sentence of paragraph 13 of the Plaintiffs' Original Complaint. The third sentence contains a conclusion of law, rather than a factual allegation, regardless, Defendants are without sufficient information to admit or deny the third sentence of paragraph 13 of the Plaintiffs' Original Complaint.

14. Defendants admit the first, second and fifth sentence and deny all other allegations of paragraph 14 of the Plaintiffs' Original Complaint.

15. Defendants admit the allegations of the first, second, fourth, fifth and sixth sentences and deny all other allegations of paragraph 15 of the Plaintiffs' Original Complaint.

16. Defendants admit the allegations of paragraph 16 of the Plaintiffs' Original Complaint, except that Tiffany Venable was "responsible for providing medical care to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

17. Defendants admit the allegations of paragraph 17 of the Plaintiffs' Original Complaint, except that M. Flint was "responsible for providing medical care to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

18. These Defendants are without sufficient knowledge to admit or deny the allegations regarding Gregory Montoya, M.D. in paragraph 18 of the Plaintiffs' Original Complaint, and therefore deny the allegations.

19. Defendants admit the allegations of paragraph 19 of the Plaintiffs' Original Complaint, except the allegation that Clint Brown was "responsible for providing jail-related services to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

20. Defendants admit the allegations of paragraph 20 of the Plaintiffs' Original Complaint, except the allegation that Nathaniel Johnson was "responsible for providing jail-related services to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

21. Defendants admit the allegations of paragraph 21 of the Plaintiffs' Original Complaint, except the allegation that Brian Jones was "responsible for providing jail-related services to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

22. Defendants admit the allegations of paragraph 22 of the Plaintiffs' Original Complaint, except the allegation that Robert Derrick was "responsible for providing jail-related services to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

23. Defendants admit the allegations of paragraph 23 of the Plaintiffs' Original Complaint, except the allegation that Daniel Hopkins was "responsible for providing jail-related services to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

24. Defendants admit the allegations of paragraph 24 of the Plaintiffs' Original Complaint, except the allegation that Stuart Boozer was "responsible for providing jail-related services to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

25. Defendants admit the allegations of paragraph 25 of the Plaintiffs' Original Complaint, except the allegation that Andrew Lomax was "responsible for providing jail-related services to Michael Sabbie during his pretrial detention at the Bi-State Jail" which

they deny.

26. Defendants admit the allegations of paragraph 26 of the Plaintiffs' Original Complaint, except the allegation that Shawn Palmer was "responsible for providing jail-related services to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

27. Defendants admit the allegations of paragraph 27 of the Plaintiffs' Original Complaint, except the allegation that Simone Nash was "responsible for providing jail-related services to Michael Sabbie during his pretrial detention at the Bi-State Jail" which they deny.

28. Defendants deny the allegations of paragraph 28 of the Plaintiffs' Original Complaint.

29. Defendants are without sufficient information to admit or deny the allegations of paragraph 29 of the Plaintiffs' Original Complaint.

30. Defendants admit the allegations of paragraph 30 of the Plaintiffs' Original Complaint.

31. The first sentence contains a conclusion of law, rather than a factual allegation, regardless, Defendants deny the allegations of sentence one of paragraph 31 of the Plaintiffs' Original Complaint. Defendants admit all other allegations in paragraph 31 of the Plaintiffs' Original Complaint.

32. Defendants deny the allegations of paragraph 32 of the Plaintiffs' Original Complaint.

33. Defendants admit that Mr. Sabbie's blood pressure was 166/99, but deny all other allegations in paragraph 33 of the Plaintiffs' Original Complaint.

34. Defendants deny the allegations of paragraph 34 of the Plaintiffs' Original Complaint.

35. Defendants deny the allegations of paragraph 35 of the Plaintiffs' Original Complaint.

36. Defendants admit the second and fourth sentences and deny all other allegations of paragraph 36 of the Plaintiffs' Original Complaint.

37. Defendants admit the first sentence and deny all other allegations of paragraph 37 of the Plaintiffs' Original Complaint.

38. Defendants admit that Defendant Venable did not arrange for Mr. Sabbie to be transported to the hospital and the sixth and seventh sentence and deny all other allegations of paragraph 38 of the Plaintiffs' Original Complaint.

39. Defendants admit that Mr. Sabbie stood up from his wheelchair and walked back to his pod and sentences five and six and deny all other allegations of paragraph 39 of the Plaintiffs' Original Complaint.

40. Defendants admit sentences one and two, but deny all other allegations of paragraph 40 of the Plaintiffs' Original Complaint.

41. Defendants deny the allegations of paragraph 41 of the Plaintiffs' Original Complaint.

42. Defendants admit sentences one and two, but deny all other allegations of paragraph 42 of the Plaintiffs' Original Complaint.

43. Defendants deny the allegations of paragraph 43 of the Plaintiffs' Original Complaint.

44. Defendants admit sentences one and five, but deny all other allegations of paragraph 44 of the Plaintiffs' Original Complaint.

45. Defendants admit sentences two and three, but deny all other allegations of paragraph 45 of the Plaintiffs' Original Complaint.

46. Defendants deny the allegations of paragraph 46 of the Plaintiffs' Original Complaint.

47. Defendants admit that Mr. Sabbie was sprayed directly in the face with a can of OC spray, but deny all other allegations of paragraph 47 of the Plaintiffs' Original Complaint.

48. Defendants admit that Mr. Sabbie was on the floor of his cell that morning, but deny all other allegations of paragraph 48 of the Plaintiffs' Original Complaint.

49. Defendants admit sentence one, but deny all other allegations of paragraph 49 of the Plaintiffs' Original Complaint.

50. Defendants deny the allegations of paragraph 50 of the Plaintiffs' Original Complaint.

51. Defendants admit sentence one, but deny all other allegations of paragraph 51 of the Plaintiffs' Original Complaint.

52. Defendants deny the allegations of paragraph 52 of the Plaintiffs' Original Complaint.

53. Defendants deny the allegations of paragraph 53 of the Plaintiffs' Original Complaint.

54. Defendants deny the allegations of paragraph 54 of the Plaintiffs' Original Complaint.

55. Defendants deny the allegations of paragraph 55 of the Plaintiffs' Original Complaint.

56. Defendants deny the allegations of paragraph 56 of the Plaintiffs' Original Complaint.

57. Defendants deny the allegations of paragraph 57 of the Plaintiffs' Original Complaint.

58. Defendants deny the allegations of paragraph 58 of the Plaintiffs' Original Complaint.

59. Defendants deny the allegations of paragraph 59 of the Plaintiffs' Original Complaint.

60. Defendants deny the allegations of paragraph 60 of the Plaintiffs' Original Complaint.

61. Defendants deny the allegations of paragraph 61 of the Plaintiffs' Original Complaint.

62. Defendants admit that Officer Simone Nash documented that she conducted the requisite 30-minute checks throughout her 12-hour night shift, but deny all other allegations of paragraph 62 of the Plaintiffs' Original Complaint.

63. Defendants deny the allegations of paragraph 63 of the Plaintiffs' Original Complaint.

64. Defendants admit sentence one, but deny all other allegations of paragraph 64 of the Plaintiffs' Original Complaint.

65. Defendants deny the allegations of paragraph 65 of the Plaintiffs' Original Complaint.

66. Defendants deny the allegations of paragraph 66 of the Plaintiffs' Original Complaint.

67. Defendants deny the allegations of paragraph 67 of the Plaintiffs' Original Complaint.

68. Defendants deny the allegations of paragraph 68 of the Plaintiffs' Original Complaint.

69. Defendants deny the allegations of paragraph 69 of the Plaintiffs' Original Complaint.

70. Defendants deny the allegations of paragraph 70 of the Plaintiffs' Original Complaint.

71. Defendants deny the allegations of paragraph 71 of the Plaintiffs' Original Complaint.

72. Defendants deny the allegations of paragraph 72 of the Plaintiffs' Original Complaint.

73. Defendants deny the allegations of paragraph 73 of the Plaintiffs' Original Complaint.

74. Defendants deny the allegations of paragraph 74 of the Plaintiffs' Original Complaint.

75. Defendants deny the allegations of paragraph 75 of the Plaintiffs' Original Complaint.

76. Defendants deny the allegations of paragraph 76 of the Plaintiffs' Original Complaint.

77. Defendants deny the allegations of paragraph 77 of the Plaintiffs' Original Complaint.

78. Defendants deny the allegations of paragraph 78 of the Plaintiffs' Original Complaint.

79. Defendants deny the allegations of paragraph 79 of the Plaintiffs' Original Complaint.

80. Defendants deny the allegations of paragraph 80 of the Plaintiffs' Original Complaint.

81. Defendants deny the allegations of paragraph 81 of the Plaintiffs' Original Complaint.

82. Defendants deny the allegations of paragraph 82 of the Plaintiffs' Original Complaint.

83. Defendants deny the allegations of paragraph 83 of the Plaintiffs' Original Complaint.

84. Defendants deny the allegations of paragraph 84 of the Plaintiffs' Original Complaint.

85. Defendants deny the allegations of paragraph 85 of the Plaintiffs' Original Complaint.

86. Defendants deny the allegations of paragraph 86 of the Plaintiffs' Original Complaint.

87. The Jury Demand and Prayer do not contain any factual allegation to admit or deny.

## C. Affirmative Defenses

88. *Qualified Immunity*. Defendants assert the affirmative defense of qualified ("good faith") immunity under Federal, Texas and/or Arkansas law with regard to any claim against them in their individual capacity because it did not violate any clearly established statutory or constitutional rights of which a reasonable person would have known when performing discretionary functions.

89. *Absolute Immunity*. Defendants assert the affirmative defense of absolute immunity under Federal, Texas and/or Arkansas law which protects public officials in their individual capacity.

90. *Sovereign/Governmental Immunity*. Defendants assert the affirmative defense of sovereign and governmental immunity under Federal, Texas and/or Arkansas law which protects the States, their agencies, political subdivisions and officials from suit and liability.

91. *Official Immunity*. Defendants assert the affirmative defense of official immunity under Federal, Texas and/or Arkansas law which protects governmental employees from personal liability.

92. *No Vicarious/Respondeat Superior Liability*. Defendants cannot be held generally liable under a theory of respondeat superior or for the torts of employees, subordinates or co-workers.

93. *Municipal Immunity*. Defendants assert the affirmative defense of municipal immunity because the plaintiff cannot establish a deprivation of rights protected by the Constitution or Federal law that was inflicted pursuant to an official, municipal, county, or governmental policy. Defendants assert that the Plaintiff cannot establish that any official's deliberate conduct was the "moving force" behind the injuries alleged. Therefore, the Plaintiff cannot establish a causal link between any actions and any deprivation of federal rights.

94. *Failure to Exhaust Remedies*. Defendants assert the affirmative defense of failure to exhaust administrative and judicial remedies. More specifically, Sabbie failed to exhaust the two-step grievance procedure with regard to all issues raised in the Plaintiffs' Original Complaint.

95. *Assumption of the Risk*. Defendants assert the affirmative defense of Sabbie's assumption of the risk.

96. *Contributory or Comparative Negligence*. Defendants assert the affirmative defense of Sabbie's contributory or comparative negligence.

97. Upon subsequent investigation into the facts of this case, Defendants reserve the right to petition the Court for leave to amend their answer or affirmative defenses.

### D. Prayer

WHEREFORE PREMISES CONSIDERED, Defendants pray that upon final hearing this Court dismiss Plaintiffs' claims against Defendants with prejudice; and all costs of court, attorneys' fees, and all other relief to which they may be justly entitled will be awarded to Defendants and for such other and further relief to which they may be entitled.

Respectfully submitted,

_____
Paul Miller

Texas State Bar No.: 14056050
Troy Hornsby
Texas State Bar No.: 00790919

MILLER, JAMES, MILLER & HORNSBY, L.L.P.
1725 Galleria Oaks Drive
Texarkana, Texas 75503
903.794.2711; f. 903.792.1276
paulmiller@cableone.net
troy.hornsby@gmail.com

*Attorneys for Defendants Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC and LaSalle Southwest Corrections; LaSalle Management Company, LLC; Bowie County, Texas; Tiffany Venable, LVN, individually; M. Flint, LVN, individually; Clint Brown, individually; Nathaniel Johnson, individually; Brian Jones, individually; Robert Derrick, individually; Daniel Hopkins, individually; Stuart Boozer, Individually; Andrew Lomax, individually; Shawn Palmer, individually; Simone Nash, individually*

## CERTIFICATE OF SERVICE

This is to certify that on July 24, 2017, a true and correct copy of the above and foregoing *LaSalle Defendants' Answer to Plaintiffs' Original Complaint (Subject to LaSalle Defendants' Motion to Dismiss for Failure to State a Claim)* was filed through the court's CM/ECF system and thereby served upon the following counsel of record:

**PLAINTIFFS' COUNSEL**
Erik J. Heipt
Edwin S. Budge
BUDGE & HEIPT, PLLC
705 2nd Ave., Suite 910
Seattle, Washington 98104
ed@budgeandheipt.com
erik@budgeandheipt.com

Bruce A. Flint
Matthew Q. Soyars
FLINT & SOYARS, PC
2821 Richmond Road
Texarkana, Texas 75503
bruceflint@aol.com
msoyars@bruceflint.com

_____
Paul Miller